CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 0 1 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CAROL FORESTER INNES, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 3:14CV00008 |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| BARCLAYS BANK PLC U.S.A. STAFF | ) |
| PENSION PLAN and BARCLAYS | ) By: Hon. Glen E. Conrad |
| BANK PLC USA STAFF PENSION | ) Chief United States District Judge |
| PLAN COMMITTEE,[1] | ) |
| Defendants. | ) |

Carol Forester Innes filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, claiming that the defendants failed to pay retirement benefits to which she was entitled. The defendants moved to dismiss this claim on the ground that Innes failed to exhaust her administrative remedies. For the reasons that follow, the court will grant the defendants' motion.

## Background

Innes was employed by Barclays American Corporation from July 16, 1979 to March 31, 1981. She then worked for Barclays Commercial Corporation from April 1, 1981 to March 1, 1994. "As a senior member of the management teams at Barclays American Corporation and Barclays Commercial Corporation, Plaintiff's total compensation and collective years of service qualified her to be vested in two retirement plans, the Restated Retirement Plan of Barclays American Corporation ("Restated Retirement Plan") and the Barclays American Corporation Retirement Restoration Plan ("Retirement Restoration Plan")." Compl. ¶ 10, Docket No. 1.

---

[1] The defendants are incorrectly named in the complaint. The docket shall be amended to reflect their correct names.

In May of 1994, Innes received a letter regarding her deferred vested pension benefits under the Plans. The letter indicated that Innes would receive a monthly payment in the amount of $2,804.58 under the Restated Retirement Plan, and a monthly payment in the amount of $1,585.84 under the Retirement Restoration Plan, beginning on December 1, 2013. Three months later, Innes received a revised letter concerning her pension benefits, which "omit[ted] the [monthly] benefit previously promised . . . from the [Retirement] Restoration Plan." Compl. ¶ 12. The letter indicated that "[t]he current value of [her] Restoration Plan benefit in the amount of $101.20 [would] be paid in the form of a total lump sum distribution cash-out." Defs.' Ex. C-2, Docket No. 7-3.

On or about September 13, 2013, Innes received a letter from Barclays Pension Service Center that included various forms for her to complete in order to begin receiving pension benefits effective December 1, 2013. The letter referenced the monthly benefits that she was eligible to receive under the Restated Retirement Plan, but did not refer to any benefits due under the Retirement Restoration Plan.

On September 20, 2013, Innes, by her attorney, forwarded the Barclays Pension Service Center a letter requesting copies of the Restated Retirement Plan and the Retirement Restoration Plan. The letter also requested an explanation of Innes' pension benefits, including any benefits under the Retirement Restoration Plan. After Innes failed to receive a response to the letter, her attorney sent a second letter in October of 2013, reiterating the requests made in the earlier letter.

On November 22, 2013, having received no response to either letter, Innes submitted her completed application for benefits under the Restated Retirement Plan. Innes indicated that she was "expressly reserving all rights to pursue her entitlement to benefits that she was promised under the Retirement Restoration Plan in May 1994." Compl. ¶ 20.

2

In February of 2014, Innes received two checks for monthly benefits to which she was entitled under the Restated Retirement Plan. As of the date her complaint was executed, "no payment ha[d] been made . . . under the Retirement Restoration Plan." Id. ¶ 22.

Innes filed the instant action on March 5, 2014, alleging, inter alia, that the defendants improperly failed to pay benefits due under the Retirement Restoration Plan. On July 1, 2014, the defendants moved to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6), based in part upon the plaintiff's failure to exhaust administrative remedies. The court held a hearing on the defendants' motion on October 16, 2014. The motion has been fully briefed and is ripe for review.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss filed under this rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

With few exceptions, "[a]n ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005); see also Makar v. Health Care Corp., 872 F.2d 80, 82 (4th Cir. 1989) (exhaustion of administrative remedies is "a prerequisite to an ERISA action for denial

3

of benefits"). Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Harrow v. Prudential Ins. Co., 279 F.3d 244, 249 (3d Cir. 2002). "Exhaustion also 'enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999) (quoting Makar, 872 F.2d at 83). Generally, if administrative remedies have not been exhausted, ERISA claims must be dismissed. See Gayle, 401 F.3d at 230; Makar, 872 F.2d at 83.

In this case, Innes claims that the defendants failed to pay benefits to which she was entitled under the Retirement Restoration Plan. Although the Retirement Restoration Plan does not contain an administrative claims procedure, the court agrees with the defendants that the Plan incorporates the administrative claims procedure set forth in the Restated Retirement Plan. The provisions of the Retirement Restoration Plan establish that its purpose is to provide retirement benefits equal to the excess that cannot be paid under the Restated Retirement Plan due to limits set by ERISA, and that the two plans are designed to operate hand-in-hand. The Retirement Restoration Plan incorporates the corresponding provisions of the Restated Retirement Plan with respect to eligibility, computation and payment of benefits, and vesting. The Retirement Restoration Plan also incorporates the administrative scheme of the Restated Retirement Plan and expressly provides that it shall be administered "in a manner consistent with" the Restated Retirement Plan. Retirement Restoration Plan ¶ 6, Docket No. 7-2. Accordingly, the court concludes that the procedure for pursuing claims for benefits under the Restated Retirement Plan is also applicable to claims for benefits under the Retirement Restoration Plan.

It is undisputed that Innes has not made a formal claim for unpaid Retirement Restoration Plan benefits in accordance with the procedure set forth in the Restated Retirement Plan. Because Innes has not pursued or exhausted her administrative remedies, or alleged sufficient facts to establish that the exhaustion requirement should be excused,[2] her claim for unpaid benefits is not yet ripe for judicial review.[3] Rather than staying the proceedings pending the exhaustion of administrative remedies, the court concludes that dismissing the complaint without prejudice is in the best interest of the parties and judicial economy.[4] See Makar, 872 F.2d at 83 (directing that the underlying ERISA claim be dismissed without prejudice "to allow the [plaintiffs] the opportunity to pursue their remedies" under the terms of their plan).

## Conclusion

For the reasons stated, the court will grant the defendants' motion to dismiss and dismiss this action without prejudice. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 24th day of November, 2014.

/s/ Glen Conrad
Chief United States District Judge

---

[2] "[C]ourts may excuse a failure to exhaust administrative remedies where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile." Schorsch v. Reliance Standard Life Ins. Co., 693 F.3d 734, 739 (7th Cir. 2012) (internal citation and quotation marks omitted). In this case, the allegations in the complaint do not provide the "clear and positive" showing of futility required to suspend the exhaustion requirement, Makar, 872 F.2d at 83, nor has the plaintiff shown that she would be denied access to the applicable claims procedure.

[3] The court has not addressed whether any attempt to pursue an administrative claim would be untimely. However, based on the arguments of counsel at the hearing on the instant motion, the court believes that the defendants have indicated that they would entertain an administrative claim. In any event, the court believes that such a claim could be timely filed.

[4] Should the plaintiff find it necessary to seek judicial review after exhausting her administrative remedies, she may do so without repaying the applicable filing fee.